# ORPHANS' COURT OF BALTIMORE CITY

Filed January 17, 1894.

### IN THE MATTER OF THE ESTATE OF MORRIS J. JACKSON.

*John G. Mitchell* for petitioner.

*Lewis Hochheimer* for respondent.

LINDSAY, GANS AND EDWARDS, JJ.—

In the petition of Julius M. Jackson, son of Morris J. Jackson by his first wife, who is still living, this Court is asked to revoke the letters of administration heretofore granted to Matilda Jackson, who claims to be the lawful widow of the said Morris J. Jackson, deceased, and to grant the same to him singly or to him jointly with his brother, Harold Jackson, who is present in Court in the capacity of a witness.

This petition is duly answered by the said Matilda Jackson, formerly Eken, the present administratrix, who substantially says that, having lawfully intermarried with the said Jackson on the 22d day of December, 1877, and having lived with him in lawful wedlock as his wife, without question or suspicion of the validity of said marriage from that date until the time of his death—a period of over 15 years—during which time a son was

born unto them, and having no knowledge of a prior subsisting marriage, as alleged in said petition and denying the existence of any such prior subsisting marriage, she is the lawful widow of the said Morris J. Jackson, and as such has the sole legal right to administer his estate.

A number of witnesses were examined on both sides, after which the several questions involved in the case were thoroughly argued by the respective counsel before the Court.

From the facts as brought to light by the testimony and a copy of the marriage record kept at Copenhagen, Denmark, the Court is satisfied that although the proof is formally not entirely complete, is yet substantially sufficient to show, in connection with other testimony, that Morris J. Jackson was legally married to one Rosalie Gluckstadt, of Fredericia, on May 26, 1857; and we are satisfied to the same degree from the testimony that this same Morris J. Jackson was subsequently married, namely, on the 22d of December, 1877, in Canada, to one Matilda Eken, now claiming to be his lawful widow, and that the first wife is still living, and consequently must have been living at the time of the second marriage. It is clear, of course, that this marriage could not be lawful under our laws, but would necessarily be felonious and subject to a severe penalty, except by the intervention of a bill of divorcement. This, we think, is the real question at issue in this case. Was there, or was there not, such a decree obtained prior to the second marriage?

No such decree has been produced and exhibited to the Court. But this is not always necessary to prove that such a document did once and may now exist, though lost to our sight. It may in certain circumstances be *presumed*, and if the proper circumstances are at hand the presumption will be as controlling as the visible presence of the decree itself would be.

In this case the circumstances are such, connected with the oral evidence furnished by the respondent, namely, that the said Jackson had shown her the divorce papers before she consented to become his wife as to lead the Court quite decidedly to the opinion that such a document had been obtained before the second marriage was entered into.

The right to presume a divorce by record cannot, we think, be doubted or denied. In 1 Bishop on Marriage, Divorce and Separation, Sec. 1145, he says: "A fact, the proof of which is by record or other writing, may be presumed the same as a parol fact;" and then, after pointing out several clear cases in the different States where this law of presumptive proof was resorted to and sustained, he goes on to speak of it comprehensively, saying, "and in a general way it is sufficiently established that to sustain a second marriage a dissolution of the former one may be presumed."

This, we think, is specially a case where such presumption comes to its proper work. The circumstances are exceptional. The respondent's testimony, already referred to, that she saw a divorce paper in the hands of Jackson before her marriage, was coupled with the free and candid acknowledgement on her part that she knew that his first wife was still living. This is not the language of "guilt that makes cowards of us all. It is the utterance of innocence, indicative of a brave and consciously pure spirit—of one who, though highly intelligent, can yet see no wrong in her act. She was evidently too intelligent not to know that she would be committing the crime of bigamy to marry a man whose wife was still living and not divorced, and can it be believed that—right in the face of a heinous felony, in the view of a gloomy cell in the penitentiary, and the scorn and contempt of all decent society—she would still commit this marriage act, if she did not know or was not fully persuaded that a divorce had been obtained? Could a refined and intelligent woman, as this one evidently is, in the possession of a sane mind, do this act, and thus declare herself a vile prostitute, and the children whom God might give her husband? And then would it not be unaccountably strange, if such a presumption did not in a case like this exist, that, during all the 15 or 16 years through which this second marriage extended this pair should never in any way have been disturbed by objections, protests, or by an action at law for bigamy, and that the trouble should arise only after the death of

412

Jackson, who left a small estate, and then not by the first wife, who is yet living, but by the sons of the first marriage, who lived with the second wife and enjoyed her kindness during a period of ten years, and who never once, even in the mildest words, intimated this woman was living in sin and shame with their father, subject to arrest any moment for one of the lowest and most shameful of crimes. These circumstances, we think, clearly open the way for and demand the proof by presumption of the lawful character of the second marriage.

The Court deems it unnecessary to go further in its expression of their opinion that the existence of a divorce in this case is clearly presumable and presumed, and that in consequence Matilda Jackson is proven to have been the lawful second wife of Morris J. Jackson, and is now his only widow; and being this, we can find no justifying reason to disturb her in the peaceful continuance and completion of her work in the administration of her husband's estate.

It is therefore ordered and decreed this 17th day of January, 1894, that the petition be dismissed with costs.